**FIDELITY & COLUMBIA TRUST CO. v. LUCAS, Collector of Internal Revenue.**

(District Court, W. D. Kentucky. July 9, 1925.)

1. **Internal revenue** ⊜25, 38—Decisions of commissioner in assessment of tax are not conclusive on courts; federal district court has jurisdiction to try de novo suits for recovery of excess payment of federal estate tax.

Decisions of the Commissioner of Internal Revenue in assessment of federal estate taxes are not conclusive on courts, but federal District Court has jurisdiction to try de novo suits for recovery of excess payments of federal estate tax, after taxpayer has taken necessary steps before appealing to courts, in view of Rev. St. §§ 3220, 3224, 3226, 3227 (Comp. St. §§ 5944, 5947, 5949, 5950) and Jud. Code, § 24,

subsec. 20, as amended by Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 991) and Act Feb. 24, 1925.

2. **Internal revenue** ⊜8—Insurance policies, taken out and assigned prior to federal estate tax act, not taxable thereunder.

Act Feb. 24, 1919, § 402, subhead f (Comp. St. Ann. Supp. 1919, § 6336¾c), purporting to place federal estate tax on proceeds of certain life insurance policies, not being declared retroactive, does not apply to life insurance policies taken out and assigned by insured before passage of act.

3. **Internal revenue** ⊜8—Transfer of properties, held in trust by decedent, not subject to federal estate tax.

Where properties were held in trust for others by decedent under instrument executed long prior to Act Feb. 24, 1919, which gave him authority to appoint a trust company as trustee in his stead, his conveyance to trust company on same trusts, held not subject to federal estate tax imposed thereby.

4. **Internal revenue** ⊜8—Trust deed for benefit of grantor's children held not transfer to take effect at death, notwithstanding income was payable to grantor for benefit of beneficiaries of trust.

Deed conveying property in trust for grantor's children and their issue until a definite date, when trust was to terminate, and property was to be conveyed to beneficiaries, except those then minors, held not a transfer to take effect in possession or enjoyment at death within Act Feb. 24, 1919, establishing federal estate tax, notwithstanding net income was to be paid by trustee to grantor, during his life or until he otherwise directed to be disposed of by him in interest of beneficiaries.

5. **Internal revenue** ⊜8—Trust deed for benefit of grantor's children held not transfer to take effect in possession or enjoyment at death.

Trust deed for benefit of grantor's children and their issue, providing for payment of income directly to beneficiaries, and for termination of trust in 15 years, when property was to pass to beneficiaries, or, if none were then living, to others designated, held not a transfer to take effect in possession or enjoyment at or after death of grantor, within Act Feb. 24, 1919, establishing a federal estate tax.

6. **Internal revenue** ⊜8—Trust deed for benefit of grantor's children held not in contemplation of death.

A trust deed for benefit of grantor's children, executed more than 2 years prior to death of grantor, and which had been conceived and negotiated while grantor was vigorous, apparently well, and in active charge of his business affairs, held not made in contemplation of death within Act Feb. 24, 1919, establishing federal estate tax, especially when executed prior to act.

In Equity. Suit by the Fidelity & Columbia Trust Company, executor of the will of Milton H. Smith, deceased, against Robert H. Lucas, Collector of Internal Revenue for

the District of Kentucky. Judgment for plaintiff.

Bruce, Bullitt, Gordon & Laurent, of Louisville, Ky., for plaintiff.

W. S. Ball, Dist. Atty., of Louisville, Ky., and A. W. Gregg, Solicitor of Internal Revenue, and T. H. Lewis, Jr., Sp. Atty., Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge. Milton H. Smith, a resident of Kentucky, died on February 22, 1921, leaving surviving him a daughter, Mrs. Eva Lee Cooper, and two sons, Sidney Smith and Milton H. Smith, Jr. Plaintiff is executor of his estate. At the time of his death Mr. Smith was president of the Louisville & Nashville Railroad Company, and had held that position for many years, and had long been a man of extensive business affairs. On December 1, 1910, he and his wife executed a deed of trust to the Columbia Trust Company, by which he conveyed to that company, in trust for his children, certain real estate in the city of Louisville owned by him, and valued by the Commissioner of Internal Revenue at $100,000 as of the date of Mr. Smith's death. This deed contained the following provisions pertinent to the issues in this case:

"The property herein conveyed * * * shall be held by the second party as trustee for the period and upon the terms and limitations hereinafter set forth, and the rents, income and revenue derived therefrom shall be collected and paid over by the second party, and the corpus of the trust estate conveyed by it as follows, to wit:

"I. The net income or revenue accruing from the property herein conveyed shall be paid by the second party to M. H. Smith, first party, during his lifetime, or until he shall in writing otherwise direct, the same to be disposed of by him at his discretion in the interest of the beneficiaries hereinafter named, with such powers in him, of selection and exclusion as may be necessary to give him absolute control of the disposition of such income or revenue during the period herein fixed.

"II. Upon the death of said M. H. Smith, or upon being by him so authorized in writing, and to the extent of such authorization, the second party as trustee hereunder shall pay the net income or revenue derived from the property herein conveyed in equal proportions (one-third to each) to Milton Smith, Sidney Smith, and Eva Lee Smith, children of the first party herein; the interest of said Eva Lee Smith in the prop-

erty herein conveyed or the income therefrom to be for her sole, separate, and exclusive use free from the debts, control, and marital rights of any husband she may hereafter have, with power in her to deal with, charge, and dispose of same or any part thereof as if she were unmarried.

"In the event any one of the three children of the first parties hereinbefore mentioned should die before the termination of the trust herein created, leaving a child or children, his or her portion of the income from his or her share of the trust estate herein created shall be appropriated by the trustee so far as necessary to the maintenance, support, or education of such child or children until such child or children shall become of legal age, when such portion of the income and any accumulations thereof in the hands of the trustee shall be paid over and delivered free of any trust or limitation to such child or children respectively when coming of age.

"Should any of the three children of the first parties hereinbefore mentioned die before the termination of this trust leaving no child or children, the share of such child so dying in the net income of the trust herein created shall belong and be paid over to the survivor or survivors of said three children and to the child or children of such as may have theretofore died, the child of any deceased beneficiary taking the parent's share.

"III. The trust herein created shall continue until December 1, 1922, and, except as herein provided, shall be terminated on that day, at which time the trustee shall by proper deeds convey the trust property in fee simple, free of any trust, to the persons entitled on that day to receive the income of the trust estate in the proportions in which they shall then be entitled to said income, excepting that such proportion of the trust property as may on that day belong or pass under this deed to minor children or heirs as provided in section II shall continue to be held by the trustee in trust for such minor children until they shall respectively attain the age of twenty-one years, when the trustee shall convey to each in fee simple, free of any trust, his or her portion of the trust estate."

On September 2, 1915, Mr. Smith and his wife executed a writing, conveying to the Fidelity & Columbia Trust Company, trustee, certain real and personal property therein described, in trust for their three children. Some of the property conveyed by this instrument was contributed by Mr.

Smith and some by Mrs. Smith. The Commissioner of Internal Revenue fixed the value of the part contributed by Mr. Smith at $329,787.50. This instrument contained the following pertinent provisions:

"All of said personal and real property to be held by said second party in trust upon the following terms and conditions:

"First. The trustee shall have, and is now given, authority to sell any and all of the property transferred under this agreement, to reinvest the proceeds thereof, and to continue to do so from time to time as in its judgment it is to the interests of this trust to do so, provided that so long as said M. H. Smith may be disposed to act, any proposed sale of property transferred hereunder, together with the proposed reinvestments of the proceeds thereof, shall be submitted to and approved by him, and provided further that, if M. H. Smith shall cease so to act, any and all proposed sales and reinvestments shall be submitted to Sidney Smith, Milton Smith, and Eva Lee Cooper, hereinafter named as beneficiaries of this trust, the approval of two of whom shall be sufficient to authorize the trustee to make such sale or reinvestment, and, if by reason of death or other cause any two of said beneficiaries shall fail to agree, the trustee shall have and is hereby given power to act.

"Second. The net income derived from the trust fund shall be equally divided between and paid to Sidney Smith, Milton Smith, and Eva Lee Cooper, children of the first parties, in quarterly or monthly installments as may be most convenient to them."

"Fourth. If, prior to the expiration of this trust, any of said beneficiaries should die, leaving surviving issue, such issue shall receive the parent's share of the income.

"Fifth. If prior to the expiration of the trust hereby created any of said three beneficiaries, namely, Sidney Smith, Milton Smith, or Eva Lee Cooper, should die without leaving surviving issue, or should leave surviving issue that should thereafter die during the continuance of the trust, the income theretofore paid to said deceased beneficiary, or to his or her issue, shall thereafter during the continuance of the trust be paid to the other two of said three beneficiaries, or per stirpes to the issue of either that may be then dead leaving issue then surviving.

"Sixth. If prior to the expiration of this trust all of said beneficiaries should die without surviving issue, or should leave issue that died before the termination of this trust, then and in that event this trust shall cease and determine, and one-half of the corpus of the trust estate shall pass in fee to the then living children of Sidney Bradford Jones, nephew of Annette M. Smith, or to the heirs of said Jones in the event he shall have no children then living, and the other one-half of said corpus shall pass in fee to the then living children of Addison R. Smith, nephew of M. H. Smith, or to the heirs of said Addison R. Smith, in the event he shall have no children then living.

"Seventh. At the expiration of fifteen (15) years from the date hereof, this trust agreement shall terminate, at which time the principal of the trust fund shall be distributed as follows:

"(a) Equally divided between said beneficiaries, Sidney Smith, Milton Smith, and Eva Lee Cooper, if all are living at that time."

The instrument also makes disposition of the interest of the children in event of their death before the expiration of the trust period.

On November 15, 1915, Mr. Smith transferred to the Fidelity & Columbia Trust Company $4,000 in cash, to be by it held in trust for the benefit of certain heirs of Mrs. Emma Weiland, a sister of Mr. Smith. This $4,000 came into Mr. Smith's hands as the result of two trust agreements executed to him as trustee—one by Mrs. S. G. Gibbs, dated February 14, 1902, conveying $1,000 to him as trustee, the interest on which was to be paid to Mrs. Gibbs during her life and after her death to Mrs. Weiland, and after the death of Mrs. Weiland the fund to be divided between Mrs. Weiland's children; and one by Mr. Smith and the other brothers and sisters of Mrs. Weiland, dated January 3, 1910, by which there was conveyed to Mr. Smith as trustee $3,000, to be held in trust for the benefit of Mrs. Weiland and her children, she to receive the income during her life, and the corpus of the trust fund to be divided among her children at her death. The $3,000 covered by this trust deed was the entire estate left by a Mrs. Blanchard, and which at her death passed to Milton H. Smith and his brothers and sisters, and which, by agreement, was voluntarily turned over to Mr. Smith as trustee, to be by him held for the benefit of Mrs. Weiland and her children. Each of these deeds authorized Mr. Smith, if he so desired, to appoint some reputable trust company as trustee to act in his stead.

By a written assignment, dated September 4, 1915, Mr. Smith transferred to his wife,

Mrs. Annette M. Smith, two policies of insurance on his life, each for the sum of $10,000.

No consideration was paid for any of these transfers.

Upon the death of Mr. Smith, his executor paid to the defendant, as Collector of Internal Revenue for the District of Kentucky, the amount of federal estate tax it conceived to be due upon the estate of Mr. Smith, but, in making up the total of his estate upon which the tax was computed, the executor did not include any of the property conveyed by Mr. Smith in the three trust instruments heretofore referred to, nor were the two policies of insurance included. The Commissioner of Internal Revenue, conceiving that these properties should be included, assessed against the estate an additional tax of $18,142.53, which the plaintiff paid under protest on March 14, 1923. Demand for refund was regularly made and denied.

This suit is to recover the amount so paid as additional estate tax, with interest from the date of its payment. A jury was waived, and a separation of findings of fact and conclusions of law requested.

Plaintiff insists that all this tax was erroneously and illegally collected, because: (1) The transfer of the two insurance policies was made before the enactment of the Act of February 24, 1919 (Compiled Statutes 1919 Supplement, § 6336¾a) under which the tax in this case was assessed, and that therefore no tax can be assessed against such transfer. (2) The property conveyed by the three trust instruments, dated respectively December 1, 1910, September 2, 1915, and November 15, 1915, was not property transferred in contemplation of death, or to take effect in possession or enjoyment at or after death, and therefore was not covered by the statute. (3) The $4,000 conveyed by the trust instrument of November 15, 1915, was not the property of Mr. Smith, but was merely held by him in a trust capacity. (4) Inasmuch as the trust instruments were executed prior to the enactment of the law under which the tax was collected, and all title of Mr. Smith was completely divested before such date, they do not fall within the provisions of the act, when properly construed; and, if the act is construed so as to cover these transactions, then it is unconstitutional.

[1] At the threshold of this case we are confronted with the novel contention advanced by the defendant to the effect that this court is powerless to give the plaintiff any relief, unless it should find that, in assessing the tax complained of, the Commissioner of Internal Revenue acted fraudulently or arbitrarily in passing upon the facts, or was clearly mistaken as to the law, and that this court, in determining whether or not the Commissioner acted fraudulently or arbitrarily, can only consider the evidence which was before the Commissioner at the time he passed upon the application for a refund. This contention will be first disposed of.

There is a line of cases holding that, where Congress has committed to some official of the Executive Department of the Government the execution of a law, and made his action final, and the matters intrusted to his discretion are such as can be legally committed to him, his decision thereon is conclusive, and can be overthrown by the court only in event his action is fraudulent or arbitrary, or is based upon a plain error of law. The most common application of this principle is found in our immigration statutes and laws dealing with the public lands. This principle, however, has no application in suits to recover internal revenue taxes erroneously or illegally assessed and collected, because Congress has not committed the final decision in these matters to the Commissioner of Internal Revenue, nor to any other executive or ministerial officer. On the contrary, jurisdiction to finally determine these matters is conferred upon the Judicial Department, provided the taxpayer has first taken all the steps required by law to be taken before appealing to the court.

In the assessment and collection of internal taxes, to which class of taxes the federal estate tax belongs, Congress has erected a complete system, which is designed, not only to prevent delay in the collection of the revenue of the government, but to fully protect the citizen against erroneous or illegal taxation. The assessment and collection of the taxes are intrusted to the Treasury Department, and, under the regulations established by that department, under the authority conferred upon it to make regulations, hearings are allowed the taxpayer, and, after the tax is assessed and paid, claim may be made to the Commissioner of Internal Revenue for a refund. Until the taxpayer has paid the tax assessed, however, no resort can be had to the courts, even though the law imposing the tax is unconstitutional.

Section 3224 of the Revised Statutes (Compiled Statutes, § 5947) provides: "No suit for the purpose of restraining the as-

sessment or collection of any tax shall be maintained in any court."

However, after the taxpayer has paid the tax, and after he has duly appealed to the Commissioner of Internal Revenue, and failed to secure the desired relief, he is given his day in court.

Section 3226, Revised Statutes (section 5949, Compiled Statutes), provides: "No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein: Provided, That if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section."

Section 3227, Revised Statutes (Compiled Statutes, § 5950), fixes the period of limitation within which suits for refunds may be brought.

Section 3220, Revised Statutes (Compiled Statutes, § 5944), authorizes the Commissioner of Internal Revenue to repay to any collector or deputy collector the full amount of any sums of money which may have been recovered against him in any court on account of internal revenue taxes illegally or erroneously collected by him.

Section 3226, Revised Statutes, supra, has time and again been construed as expressly conferring upon the taxpayer, who has complied with its provisions, the right to sue the Collector of Internal Revenue for the recovery of taxes illegally or erroneously collected by him. So it will be readily seen that, instead of giving the Treasury Department final jurisdiction in such cases, the right to finally determine such controversies is conferred upon the Judicial Department, and the language of the statute cannot possibly be construed as limiting the testimony to be heard by the court to that already heard by the Commissioner of Internal Revenue. This section was originally enacted in 1866, and in 1877, in the case of U. S. v. Pacific R. R., 27 Fed. Cas. p. 397, Case No. 15,983, Mr. Justice Miller, sitting as a circuit justice, defined the purpose of this section and the power of the court under it. He said:

"We have even, without the aid of an act of Congress, refused to grant an injunction to stay the collection of taxes under any circumstances—and this upon the broad ground applicable to this case, that the taxes of the government are essential to the support and existence of the government; and we have always refused to permit any interference with their collection by injunction. The principle involved is this: That by setting up other debts, and cross-actions and counterclaims against the government, it would, in effect, be placing the existence of the government at the mercy of any person who chose to set up his right in this way, and thus hinder the collection of the taxes. Since that decision was originally made, the statutes passed by Congress go very strongly in that direction. Congress has passed a statute expressly forbidding the granting of an injunction for that purpose. It has passed a statute for the correction of errors of the assessing and collecting officers of the government, which the Supreme Court has said, in two or three cases, is a complete and perfect system. If the tax is unjustly assessed, or supposed to be unjustly assessed, the remedy allowed is an appeal to the Commissioner of Internal Revenue. If he decides against the party, or fails to decide within six months, the party injured can pay his taxes and go into court and sue for the amount, and recover it back if he is wrongfully assessed, the court being unprejudiced by any action of the commissioner. The statute says he may bring his suit to recover it back, and he will get it back if the court so decides. The time for bringing such a suit is limited, so as to have no delay in settling the matter. It must be within twelve months—six months after the commissioner has decided, and twelve months after the appeal has been taken. And we have said over and over again in our courts that that was a complete and exclusive system of correctional justice in regard to the collection of taxes unjustly assessed; that it was the only system, and by that ruling we abide."

In the case of U. S. v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131, the Supreme Court, speaking through Mr. Justice Field, in discussing the weight to be given the findings of the Commissioner of Internal Revenue in the assessment of internal taxes, when such findings are attacked in court, said: "The assessment of the Commissioner of Internal

Revenue was only prima facie evidence of the amount due as taxes upon the spirits distilled between the dates mentioned. It established a prima facie case of liability against the distiller, and nothing more. If not impeached, it was sufficient to justify a recovery; but every material fact upon which his liability was asserted was open to contestation. He and his sureties were at liberty to show that no spirits, or a less quantity than that stated by the commissioner, were distilled within the period mentioned, and thus entirely, or in part, overthrow the assessment."

Section 3226, Revised Statutes, supra, with but slight changes, has been in effect since 1866, and literally thousands of suits against collectors have been maintained under it, and yet, so far as this court is advised, the rule laid down in the two cases quoted from had never been questioned by any federal court until the decision by the Circuit Court of Appeals for the Seventh Circuit in the case of Park Falls Lumber Co. v. Burlingame (C. C. A.) 1 F.(2d) 885, cited by counsel for defendant, which was rested upon the wholly erroneous assumption that Congress had delegated to the Treasury Department exclusive and final discretion in the assessment and collection of internal taxes. Congress has been so solicitous to give the taxpayer the right to have his tax liability finally determined by a court convenient to the taxpayer, and with as little red tape as possible, that it has even made provision in certain cases whereby the taxpayer may bring suit to recover taxes wrongfully collected in the District Court directly against the United States, instead of against the collector, as authorized by section 3226, supra.

Subsection 20 of section 24 of the Judicial Code (Comp. St. § 991) gives to the District Court concurrent jurisdiction with the Court of Claims of suits against the United States to recover taxes erroneously or illegally collected, where the amount does not exceed $10,000, and this section, as amended by the Act of November 23, 1921 (Comp. St. Ann. Supp. 1923, § 991), and by the Act of February 24, 1925 (43 Stat. 972), gives such courts such jurisdiction, regardless of the amount involved, in cases where the collector to whom the tax was paid is dead or out of office at the time of the filing of the suit.

In view of these various statutory provisions and the authorities referred to, this court is satisfied that it has jurisdiction to try the question of the plaintiff's tax liability in this case de novo, without in any way being limited to the evidence heard by the Commissioner, and unprejudiced by any action he may have taken in the matter. What is said here, of course, has no application to the weight required to be given to findings of fact made by the Board of Tax Appeals under the Act of June 2, 1924, c. 234, § 900 (43 Stat. 336).

Therefore the duty devolves upon the court to determine for itself upon the record in this case, whether or not any of the recited transfers should have been taken into consideration in fixing the amount of the estate tax due by the estate of Mr. Smith.

[2] The two insurance policies were taken out long before the passage of the Act of February 24, 1919, under which the tax in this case was assessed, and the assignment of these policies to Mrs. Smith was also executed before that date.

Section 402 of the act in question (Comp. St. Ann. Supp. 1919, § 6336¾c) provides as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; * * *

"(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

It will be observed that the act in express terms is declared to be retroactive as to all the transfers embraced in subhead (c), but is not expressly made retroactive as to insurance policies covered by subhead (f), and under the general rule that statutes will not be construed to be retroactive, unless their language compels such construction, it seems

clear that the amount of these policies should not have been considered in fixing the tax. At any rate, it appears to the court that all uncertainty on this question has been set at rest by the recent case of Lewellyn v. Frick, 45 S. Ct. 487, 69 L. Ed. ——, decided by the Supreme Court on May 11, 1925, and upon the authority of that case the transfer of these policies was not subject to the tax.

[3] The action of the Commissioner in holding that the transfer of the $4,000 by the trust instrument of November 15, 1915, was taxable, can be explained only upon the theory that he did not have before him the facts. This instrument transferred no interest of Mr. Smith, personally, in the $4,-000 fund. It was simply the designation by Mr. Smith, as trustee, of a new trustee in his stead, as he was authorized to do by the two trust agreements, dated respectively February 14, 1902, and January 3, 1910, which created the trust fund of $4,000. The only interest Mr. Smith personally ever had in any part of this fund was such interest as he may have had in the $3,000 estate of Mrs. Blanchard prior to the execution of the trust agreement of January 3, 1910, and it is not seriously contended that the transfer of his interest by that writing was made in contemplation of death, or to take effect in possession or enjoyment at or after his death. The court is therefore of the opinion that the $4,000 fund should not have been considered in arriving at the amount of tax due by the estate.

[4] As to the deed of trust of December 1, 1910, the court is fully satisfied that there is no basis whatever for holding that it was made in contemplation of death, within the meaning of the act. The defendant, in the argument of this case, did not make any such contention. He does contend, however, that this deed was a transfer of property to take effect in possession or enjoyment at the death of Mr. Smith, and therefore taxable under the act. An examination of the provisions of this deed, quoted in the early part of this opinion, will disclose the fallacy of this contention. Neither the possession nor the enjoyment of the property by the beneficiaries as a class was made dependent upon the death of Mr. Smith. The termination of the trust and the conveyance of the property to the beneficiaries was fixed without any reference whatever to the date of his death. His death neither hastened nor postponed the day when the beneficiaries as a class should come into possession or enjoyment of the estate. Upon the execution of the deed Mr. Smith completely divested himself of all interest in and title to the property conveyed. It is true that by paragraph I he provided that during his lifetime, or until he should otherwise in writing direct, the net income accruing during the trust period should be paid by the trustee to him, but it was not to be received by him for his own benefit; it was to be disposed of by him at his discretion, "in the interest of the beneficiaries hereinafter named." Any income received by Mr. Smith under this clause of the deed was received by him in trust for the beneficiaries therein named as a class—not for his own use. It was their money, belonging to them as a class, and not his, and at his death he had no interest or title in the property to pass. Furthermore, on September 4, 1915, by a letter to the trustee of that date, he divested himself of his right to distribute the income among the beneficiaries. From that date until his death he had no connection whatever with the trust property. Therefore the court holds that the transfer was not made in contemplation of death, nor was it one to take effect in possession or enjoyment at or after his death, and consequently was not taxable under the act.

[5] This leaves only the transfer of September 2, 1915, to be disposed of. This instrument cannot be construed as a transfer of property to take effect in possession or enjoyment at or after the death of Mr. Smith. No power of revocation or amendment was retained. It provided that the entire income should be paid by the trustee directly to the beneficiaries therein named, in monthly or quarterly installments as the beneficiaries might elect. The trust was to end at the expiration of 15 years, at which time the property was to be conveyed to the three children of Mr. Smith, or, if dead, to their children, if of age; if not of age, then as to such minors the trust was to continue for an additional period of 6 years, at which time the interest of such minors should be conveyed to them. If each of the three children of Mr. Smith should die before the end of the trust period, leaving no children, then the property was to go in equal parts to the children of a nephew of Mrs. Smith and the children of a nephew of Mr. Smith, if any, and, if none, to their heirs.

It will be observed that Mr. Smith not only completely divested himself of all title to and interest in the property transferred, but he provided against the possible contingency of the trust failing because of the death of his children without heirs before the expiration of the trust period. His death did not in the slightest degree enlarge

or change either the possession or the enjoyment by the beneficiaries of the property conveyed. Therefore, unless the facts show that this transfer was made in contemplation of death, it should not have been taxed.

[6] Inasmuch as this transfer did not take place within 2 years of the death of Mr. Smith, there is no legal presumption that it was made in contemplation of death. Whether it was so made is purely a question of fact, to be determined from all the circumstances leading up to and attending its execution. Viewed in the light of all the evidence, the only fact from which a conclusion could be drawn that it was executed in contemplation of death is the circumstance that it was actually dated September 2, 1915, the day following the day upon which Mr. Smith developed a hemorrhage of the throat. The evidence, however, is not only very clear that Mr. Smith did not regard this throat trouble as serious, but the proof is overwhelming that the execution of the trust instrument was not the result of a purpose formed after the hemorrhage developed. Its execution on that day was the culmination of a fixed plan he had formed more than a year previous, and concerning which he had been in almost continuous correspondence and consultation with Mr. Botts, of the Fidelity & Columbia Trust Company, since August 2, 1915. The instrument finally executed on September 2, 1915, was in all substantial respects a duplicate of the penciled draft made by Mr. Smith in his own handwriting on August 16, 1914, and found among Mr. Smith's papers after his death. The proof is conclusive that from the time he drafted the original memorandum until he approved the final draft of the transfer and executed it he never changed or wavered in his purpose expressed in that original draft. After a number of drafts had been submitted to him by Mr. Botts, the final draft of the trust instrument—the one which was signed on September 2, 1915—was mailed to him by Mr. Botts on August 30, 1915, and he had it in his possession at the time he became ill on September 1, 1915. At the time he made the original draft on August 16, 1914, Mr. Smith was enjoying his usual health, and was vigorous and active for a man of his age. He was actively performing his duties as president of the Louisville & Nashville Railroad Company, and the same is true during all the month of August, 1915. Furthermore, it must be borne in mind that a desire to evade the tax could not have prompted the transfer, because at its date there was no estate tax.

To hold that under these circumstances the transfer was executed in contemplation of death, as that term is used in the statute, or that it was to any extent influenced by his illness of September 1, 1915, would be to disregard the uncontroverted facts. The court therefore holds that this transfer was not taxable.

In view of the conclusions herein expressed, it becomes unnecessary for the court to pass upon the constitutional question raised by the plaintiff.

For the reasons stated, the court is of opinion that the plaintiff is entitled to recover the full amount sued for, with interest from the date of its payment.

A judgment, with separate findings of fact and conclusions of law to conform to the views herein expressed, may be prepared and presented for entry.