ELMHURST INV. CO. v. UNITED STATES.

ORLANDO PETROLEUM CO. v. SAME.

District Court, D. Kansas, First Division. February 7, 1928.

Nos. 3040, 3041.

Internal revenue ⬅⟲38(7)—Presentation of claim to Board of Tax Appeals is not condition precedent to action to recover overassessment (Revenue Act 1926, § 1113 [26 USCA § 156]).

It is not essential to an action under Rev. St. § 3226, as amended and re-enacted by Revenue Act 1926, § 1113 (26 USCA § 156), to recover an overassessment, that the claim should first be presented to the Board of Tax Appeals, in view of Secretary of Treasury Regulations 69, art. 1351, and Revenue Act 1926, § 274, and section 284 (e) being 26 USCA §§ 1048, 1065, and Revenue Act 1924, §§ 900, 904, as added by Revenue Act 1926, § 1000 (26 USCA §§ 1211, 1216).

At Law. Actions by the Elmhurst Investment Company and by the Orlando Petroleum Company against the United States. On motions to dismiss. Denied.

T. M. Lillard, Bruce Hurd, and O. B. Eidson, all of Topeka, Kan., for plaintiffs.

Al. F. Williams, U. S. Atty., and Alton H. Skinner, both of Topeka, Kan.

McDERMOTT, District Judge. These are two cases to recover income and excess profits taxes paid in 1920, for the year 1919, levied under the Revenue Act of 1918 (40 Stat. 1057). The Elmhurst Company was the owner of a part of the capital stock of the Orlando Company; the return made by the two plaintiffs was a consolidated return. Similar motions to dismiss have been made in each case, and the cases have been argued, briefed, and submitted together.

The petition in the Elmhurst Case was filed September 15, 1926, and alleges that the income and excess profits taxes lawfully assessable for the year 1919 could not exceed $70,889.37, but that it paid taxes for the period in the amount of $79,545.10. Waivers of the statutory limitations are alleged. It is further alleged that on February 19, 1926, the plaintiff filed a claim for refund, and that six months have elapsed, and the Commissioner has neither allowed nor rejected such claim. The prayer is for judgment for the overpayment and interest. A second cause of action has been dismissed.

The petition in the Orlando Case was filed on September 14, 1926, and contains the same general allegations, covering the same period. The amount sued for is $82,105.50 and interest. It is alleged that the collector to whom the tax was paid is no longer in office.

The defendant appeared specially in each case, and filed identical motions to dismiss, which ask "for an order dismissing said cause, for the reason that said cause does not state facts sufficient in either cause of action attempted to be set forth in said petition to give this court jurisdiction to pass upon the issues attempted to be raised in said petition in favor of the plaintiff and against the defendant, in that said petition shows upon its face that said plaintiff has not pursued to a final result the remedy provided by law in such cases before the Commissioner of Internal Revenue and the Board of Tax Appeals, established by law and given jurisdiction to hear and pass upon the question of the tax liability of the plaintiff herein. Wherefore defendant moves that said cause be dismissed for want of jurisdiction in this court, as hereinbefore first prayed for." These motions come on now for decision.

There can be no question of the jurisdiction of this court. The twentieth paragraph of section 24 of the Judicial Code, as amended (28 USCA § 41), confers original jurisdiction upon District Courts of the United States, "and of any suit or proceeding commenced after the passage of the Revenue Act of 1921, for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws, even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead or is not in office as collector of internal revenue at the time such suit or proceeding is commenced."

The motions have been treated by counsel as motions to dismiss for lack of sufficient averments to constitute a cause of action. Questions not going to jurisdiction have been briefed and argued, and in the interest of expedition the motions will be considered as testing the sufficiency of the petitions.

The defendant suggests that the petitions are insufficient, because of lack of particularity in allegations of fact. The petitions allege the overpayment, and the date and amount thereof. A detailed statement of all the accounts of the companies for the period involved is unnecessary. The petitions state the ultimate facts sufficiently as against a motion to dismiss.

The government urges, in the Elmhurst Case, that the petition does not allege a rejection of the claim for refund by the Commissioner. The petition alleges that six months elapsed after the claim was made without any action by the Commissioner. This is sufficient. Section 3226 of the Revised Statutes as amended (section 1113 of the Revenue Act of 1926 [26 USCA § 156]) provides that "no such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time." If the government's argument was sound in this respect, a Commissioner might deny a taxpayer relief indefinitely by simply taking no action on a claim.

The main question urged by the government is that the taxpayer may not sue in the courts for an overpayment of tax, until he has first presented his claim to the Board of Tax Appeals, and has been there denied relief. It is a well-recognized and sound rule of law that the legislative body may provide administrative tribunals for the redress of grievances, and that such administrative remedies must be exhausted before application is made to the courts for relief. This rule is not disputed. The question is: Has Congress so provided? Not only am I unable to find any such provision in the laws, but, on the contrary, Congress has prescribed the precise conditions under which a taxpayer may bring such actions as these, and has not prescribed an application to the Board of Tax Appeals as one of those conditions. Moreover, the Congress seems not to have conferred jurisdiction upon the Board of Tax Appeals to hear claims for refunds, except as incidental to the redetermination of deficiency claims made by the Commissioner. The taxes in question were for the year 1919, and they were paid in 1920. The Board of Tax Appeals was created in 1924. At the time the tax was assessed and paid, the Board of Tax Appeals did not exist. In both the acts of 1924 and 1926, when the Board did exist, Congress re-enacted section 3226 of the Revised Statutes (26 USCA § 156), which reads:

"Sec. 1113. (a) Section 3226 of the Revised Statutes, as amended, is re-enacted without change, as follows:

" 'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have

been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.'

"(b) This section shall not affect any proceeding in court instituted prior to the enactment of the Revenue Act of 1924."

Pursuant to the authority conferred by this section, the Secretary of the Treasury has established regulations concerning suits of this character. They may be found in Regulations 69, article 1351. This regulation does not suggest any necessity for application to the Board of Tax Appeals, and makes no attempt to add any requirements to those imposed by the section of the statute quoted.

Section 3226, supra, with minor amendments, has been in force since 1866, and has been invoked and construed in many cases. In 1877, Mr. Justice Miller, sitting as a Circuit Justice, in construing this statute, answered the contention made here that the petitions must fall, because the Commissioner did not reject the claim in six months. He said:

"It has passed a statute for the correction of errors of the assessing and collecting officers of the government, which the Supreme Court has said, in two or three cases, is a complete and perfect system. If the tax is unjustly assessed, or supposed to be unjustly assessed, the remedy allowed is an appeal to the Commissioner of Internal Revenue. If he decides against the party, or fails to decide within six months, the party injured can pay his taxes and go into court and sue for the amount, and recover it back if he is wrongfully assessed, the court being

unprejudiced by any action of the Commissioner. The statute says he may bring his suit to recover it back, and he will get it back if the court so decides. The time for bringing such a suit is limited, so as to have no delay in settling the matter. It must be within twelve months—six months after the Commissioner has decided, and twelve months after the appeal has been taken. And we have said over and over again in our courts that that was a complete and exclusive system of correctional justice in regard to the collection of taxes unjustly assessed; that it was the only system, and by that ruling we abide." U. S. v. Pacific R. Co., 27 Fed. Cas. 397, No. 15,983.

See, also, Fidelity & Columbia Trust Co. v. Lucas (D. C.) 7 F.(2d) 146.

The contention of the government amounts to a request to amend this section by providing the additional requirement that the taxpayer shall first apply to the Board of Tax Appeals for relief. The Board of Tax Appeals is "an independent agency in the executive branch of the government." Section 900, Revenue Act of 1924, as added by § 1000, Revenue Act of 1926 (26 USCA § 1211). It has such jurisdiction only as is conferred upon it by the act of its creation. Section 904, Revenue Act 1924, as added by section 1000, Revenue Act 1926 (26 USCA § 1216), provides that the Board "shall have such jurisdiction as is conferred in them by title 2 and title 3 of the Revenue Act of 1926 or by subsequent laws." Title 3 is concerned with estate taxes, and is not pertinent here. Title 2 is concerned with income taxes. Section 274 of the Revenue Act of 1926 (26 USCA § 1048) confers upon the Board jurisdiction as follows:

"If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency."

Subdivision (e) of section 284 of the same act provides:

"(e) If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of

the Board has become final, be credited or refunded to the taxpayer as provided in subdivision (a). Such refund or credit shall be made either (1) if claim therefor was filed within the period of limitation provided for in subdivision (b) or (g), or (2) if the petition was filed with the Board within four years after the tax was paid, or, in the case of a tax imposed by this Act, within three years after the tax was paid." 26 USCA § 1065 (e).

From an examination of the entire act, it seems that the original jurisdiction of the Board of Tax Appeals is confined to a re-determination of a deficiency which the Commissioner claims against the taxpayer. If the jurisdiction attaches by a petition of the taxpayer from an order of the Commissioner assessing a deficiency, then the Board may exhaust the matter and order a refund, in a proper case. But nowhere is any provision made, or procedure prescribed, for a taxpayer to apply in the first instance to the Board for refund of an overpayment. In the absence of such provision, either the courts are open or the taxpayer has no redress.

If a taxpayer must go to the Board of Tax Appeals to recover an overpayment, before applying to the District Court, it would practically nullify section 1113 of the act of 1926. By the terms of the act decisions of the Board of Tax Appeals are final, unless reversed, on appeal, by the Circuit Court of Appeals or by the Supreme Court. It would appear to be manifest that the right given by section 1113 to apply to the District Court would be of no avail, if it could only be exercised after the Circuit Court of Appeals or the Supreme Court had decided the case. The whole act is designed to separate deficiency claims from claims for refunds; deficiency claims now go through the channel of the Board of Tax Appeals to the Circuit Court of Appeals, while claims for refund continue to go through the District Courts.

The government relies on the case of Suhr v. United States (D. C.) 14 F.(2d) 227. The decision in that case does not support the government's contention. There the taxpayer made a claim for refund for taxes paid on stock dividends, which was promptly allowed. The Commissioner made a deficiency claim for the same year, on other matters, far in excess of the refund allowed, and credited the refund on the deficiency. The taxpayer filed his petition for a redeter-

mination of this deficiency before the Board of Tax Appeals, and, while that was pending and undetermined, brought his action in court to recover his refund on the stock dividend item which had been allowed. The court very properly abated the action as required by subdivision (d) of section 284 of the Revenue Act of 1926 (26 USCA § 1065, [d]). That is not this case.

When the jurisdiction of the Board has attached by the taxpayer filing a petition with the Board to redetermine a deficiency, the act protects that jurisdiction by providing that no suit for a refund covering the same period shall be filed by the taxpayer while the matter is pending before the board. Section 284, Revenue Act of 1926. It is asserted in the briefs that, prior to the bringing of these actions, and after the claim of refund had been made, the Commissioner mailed to the taxpayer a notice of deficiency, and that this action should be abated by virtue of subdivision (d) of section 284, which reads:

"(d) If the Commissioner has mailed to the taxpayer a notice of deficiency under subdivision (a) of section 274 and if the taxpayer after the enactment of this act files a petition with the Board of Tax Appeals within the time prescribed in such subdivision, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except * * *"

The government argues that, the cases falling within none of the exceptions of the subdivision, they should be abated. While this phase has been briefed by both sides, the facts appear in the briefs, and not in the pleadings; it will therefore not be necessary to decide the interesting questions of whether the Commissioner may deny the taxpayer his remedy in court by sending a notice of deficiency after the taxpayer has filed his claim for refund, which he must do six months before he files his suit, or whether the suit shall be abated if the Commissioner has mailed his notice before the suit, but the taxpayer files his petition with the Board after the action in court has been instituted.

The motions will be denied. The defendants will be given 20 days in which to answer, if desired.