**ROBERT P. HYAMS COAL CO., Inc., v. UNITED STATES.**

District Court, E. D. Louisiana. June 4, 1928.

No. 18909.

**1. Internal revenue ☞7(1)—Courts, in absence of positive law to contrary, will construe revenue act as intended to reach actual income.**

Mere bookkeeping methods neither create nor change any fact, and have only an evidentiary value; so that courts, in absence of positive law to contrary, will construe a revenue act as intended to reach actual income, regarding books as neither indispensable nor conclusive.

**2. Internal revenue ☞7(4)—Freights held income subject to tax as such during fiscal year received, though bookkeeping entries were made in preceding year in anticipation of receipt (Revenue Act 1918, § 240 [Comp. St. § 6336⅛ss]).**

In determining consolidated income and profits taxes, pursuant to Revenue Act 1918, § 240 (Comp. St. § 6336⅛ss), freights received during fiscal year *held* not income, subject to tax as such within fiscal year preceding actual accrual, merely because bookkeeping entries were made in anticipation; books being kept approximately on accrual basis, and correct picture of income requiring consideration of such amount as income for year in which it was received.

**3. Internal revenue ☞7(4)—Taxpayer, having once adopted an accrual basis, must consistently adhere thereto. (Revenue Act 1918).**

Under Revenue Act 1918 (40 Stat. 1057), accrual basis, once adopted, must be consistently adhered to by taxpayer, precluding computation of taxes for given year by using cash basis for a part and accrual basis for balance of year.

**4. Internal revenue ☞25—Commissioner must compute taxes in such manner as to clearly reflect income, though taxpayer has mixed method of bookkeeping (Revenue Act 1918, § 212 (b); Comp. St. § 6336⅛f (b).**

Under Revenue Act 1918, § 212 (b), Comp. St. § 6336⅛f (b), relative to computation of net income, Commissioner has burden to make computation of taxes in such manner as clearly reflects income, though taxpayer has adopted a mixed method of bookkeeping.

**5. Internal revenue ☞25—Assessment of income and profits taxes by Commissioner is only recognized as prima facie correct.**

Assessment of income and profits taxes by Commissioner is only recognized as prima facie correct, and only for practical purposes of collection.

**6. Internal revenue ☞25—Findings of Board of Tax Appeals are entitled to great weight.**

Board of Tax Appeals having appellate jurisdiction of decisions of Commissioner, its findings are entitled to great weight, and should not lightly be disturbed.

**7. Statutes ☞245—Doubt in taxing statute should be resolved in favor of taxpayer.**

Any doubt in taxing statute is to be resolved in favor of taxpayer and against the government.

At Law. Action by the Robert P. Hyams Coal Company, Inc., against the United States. Judgment for plaintiff.

A. M. Suthon, Henry & Cooper, and John J. Finnorn, all of New Orleans, La., for plaintiff.

Wayne G. Borah, U. S. Atty., and T. M. Logan Bruns, Asst. U. S. Atty., both of New Orleans, La.

BURNS, District Judge. Plaintiff sues to recover at law $3,724.96, alleged to have been illegally assessed and collected over its protest in October, 1925, as additional taxes in the sum of $3,528.85 for the fiscal year ending July 31, 1918, and $196.11 for the fiscal year ending July 31, 1919.

Plaintiff is a Louisiana corporation, domiciled in New Orleans, and is affiliated with the subsidiary corporations Gulf Barge & Towing Company and South Brilliant Coal Company. These kept their books of account and filed consolidated income and profits tax returns together for the taxable years in question upon a fiscal year basis as of July

31st in each year, pursuant to section 240 of the Revenue Act of 1918 (40 Stat. 1145 [Comp. St. § 6336⅛ss]), which defines affiliated corporations and authorizes such consolidated returns. Trial by jury was formally waived, and findings of facts requested.

On July 22, 1924, plaintiff was notified by the Commissioner of a proposed assessment of additional taxes. Appeal was taken to the United States Board of Tax Appeals, which, after hearing on November 10, 1924, made findings of fact and ordered the taxes computed in accordance with its decision, viz. an additional tax of $3,455.34 for the fiscal year ending July 31, 1918, and $1,791.52 for the fiscal year ending July 31, 1919. The items of income in question grow out of certain freights earned on seven barge voyages, which were entered on the books of the barge and towing company as income for the years 1918 and 1919, and which, for the purpose of taxation as income, plaintiff contends should be viewed as having been earned or accrued for the two subsequent years respectively.

The plaintiff contends that its books were kept on an accrual basis, and as the seven barge voyages by which the freights were earned were not completed until the subsequent fiscal years, although begun in the two preceding years of 1918 and 1919, the same were not actually accrued when entered in the books; that most of the expenses of each of the seven barge voyages were not paid until the fiscal year following that in which the freight was entered on the books and when the freight was actually earned or accrued.

As to three of the voyages in question, entered in the books of the Gulf Barge & Towing Company as income prior to July 31, 1918, and as to three of the four voyages in question entered as income prior to July 31, 1919, the agreed facts are as follows:

(1) Entered as income for the fiscal year ended July 31, 1918:

| No. | Date Entered. | Date Sailed. | Cargo. | Barge. | Amount of Freight. |
|---|---|---|---|---|---|
| 1 | 7-29-18 | 7-31-18 | Coal | San Antonio | $ 5,617.77 |
| 2 | 7- 9-18 | 7-15-18 | Lumber | Holliswood | 10,784.58 |
| 3 | 7-23-18 | 8-18-18 | do. | Madison | 3,664.78 |
| | | Total | | | $20,067.13 |

No. 1 sailed from New Orleans to Havana, Cuba, finished discharging the cargo on August 7, 1918, and returned to Mobile, Ala., on August 15, 1918.

No. 2 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on August 27, 1918, and returned to Pensacola, Fla., on August 31, 1918.

No. 3 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on September 11, 1918, and returned to Pensacola on September 15, 1918.

(2) Entered as income for the fiscal year ended July 31, 1919:

| No. | Date Entered. | Date Sailed. | Cargo. | Barge. | Amount of Freight. |
|---|---|---|---|---|---|
| 1 | 7-21-19 | 7-22-19 | Coal | San Antonio | $ 9,590.85 |
| 2 | 7- 6-19 | 7- 6-19 | Lumber | Ethel Clarke | 5,151.25 |
| 3 | 7- 6-19 | 7- 6-19 | do. | Madison | 3,409.49 |
| | | Total | | | $18,151.59 |

No. 1 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging her cargo on August 2, 1919, and returned to Pensacola on August 7, 1919.

No. 2 sailed from St. Andrews, Fla., for Cardenas, Cuba, discharged her cargo at Cardenas, and returned to St. Andrews August 24, 1919.

No. 3 sailed from St. Andrews, Fla., for Caibarien, Cuba, discharged her cargo, and returned to Mobile, Ala., on August 30, 1919.

The fourth barge voyage, entered as income for the fiscal year ended July 31, 1919, is in dispute, but I find the facts with reference to this voyage, as established by the testimony of plaintiff's expert accountant, who examined the books and records, as follows:

| No. | Date Entered. | Date Sailed. | Cargo. | Barge. | Amount of Freight. |
|---|---|---|---|---|---|
| 4 | 6-12-19 | 6-15-19 | Lumber | Holliswood | $11,536.59 |

No. 4 sailed from an American port (the witness believed it was Pensacola) for Havana, and returned from this voyage to an American port (Pensacola) on August 6, 1919. It did not earn any freight between June 12, 1919, and August 6, 1919, and evidently was employed only on this particular voyage during that period. The towing facilities of the Gulf Barge & Towing Company being limited, the tug Nimrod left the Holliswood in Havana to unload, and did not return for her until after having brought other barges from the United States to Cuba.

I further find, according to the same witness, that whilst certain of the expenses of the seven barge voyages, including certain expenses of the tug "Nimrod" during 1919, had been prepaid as of the close of the two respective fiscal years, most of the expenses

of each voyage were not paid until the fiscal year following that in which the freight was placed upon the books, so that the following amounts of net income of the Gulf Barge & Towing Company should be deferred:

(1) Income to be deferred from the fiscal year ending July 31, 1918, to the fiscal year ending July 31, 1919:

| No. | Barge. | Gross Freight. | Expenses Prepaid as of July 31, 1918. | Net Income to be Deferred. |
|---|---|---|---|---|
| 1 | San Antonio | $5,617.77 | $ 450.02 | $ 5,167.75 |
| 2 | Holliswood | 10,784.58 | 1,748.84 | 9,035.74 |
| 3 | Madison | 3,664.78 | 155.90 | 3,508.88 |
| | Totals | $20,067.13 | $2,354.76 | $17,712.37 |

(2) Income to be deferred from the fiscal year ending July 31, 1919, to the fiscal year ending July 31, 1920:

| No. | Barge. | Gross Freight. | Expenses Prepaid as of July 31, 1919. | Net Income to be Deferred. |
|---|---|---|---|---|
| 1 | San Antonio | $ 9,590.85 | $ 1,607.90 | $ 7,982.95 |
| 2 | Ethel Clarke | 5,151.25 | 185.77 | 4,965.48 |
| 3 | Madison | 3,409.49 | 162.30 | 3,247.19 |
| 4 | Holliswood | 11,536.59 | 3,723.12 | 7,813.47 |
| | Tug Nimrod | | 4,833.86 | |
| | Totals | $29,688.18 | $10,512.95 | $24,009.09 |

Deductible expenses of tug Nimrod......... 4,833.86

Net income to be deferred until the fiscal
  year ended July 31, 1920.................... $19,175.23

I cannot agree with the government's contention that the plaintiff's books reflect the true income, and that plaintiff should not be permitted to change its method of accounting for these two years to reflect the facts. The witness Abernethy satisfies me that, whilst the books were not exactly kept on an accrual basis, the mere change contemplated by the adjustment sought would complete their accrual character. He defines that term as follows:

"An accrual basis is a basis of determining the profit or loss made by any concern, whether an individual partnership or corporation, other than upon the basis of actual cash receipts and disbursements. Into that accrual basis there may be entered the sales of merchandise for credit, sold in one period and paid in a subsequent period. There may enter into it the payment of expenses in one period that applies against a future period. There may enter into it the accrual of wages which have been earned by the employees in one period and not actually paid until a subsequent period, or of taxes or of interest. In other words, it is the alternative basis from that of cash receipts and disbursements, upon which the majority of concerns close their books and report their profits."

I find further:

That the Robert P. Hyams. Coal Company, after the decision and denial of a rehearing by the Board of Tax Appeals, paid the recomputed tax for the fiscal years 1918 and 1919, under tax bills dated June 4, 1925, to the collector of internal revenue at New Orleans, as follows:

October 26, 1925................... $1,819.16
October 29, 1925...................   3,528.85

That thereafter the plaintiff, Robert P. Hyams Coal Company, Limited, made a claim for refund of this payment in proper form as follows: For 1918, $3,455.84, with interest to date of payment, which amounted to $3,528.85; for 1919, $158.47, with interest to date of payment, which amounted to $196.11. The explaining and supporting documents are in the record as Hyams Exhibits B and C.

That the amounts of freight mentioned in the following excerpt from the admission of fact of record, totaling $20,067.13, entered prior to July 31, 1918, were not paid to the Gulf Barge & Towing Company until subsequent to July 31, 1918, and that the voyages for which this freight was entered were not completed until the return of the barges to an American port subsequent to July 31, 1918:

| No. | Date Entered. | Date Sailed. | Cargo. | Barge. | Amount of Freight. |
|---|---|---|---|---|---|
| 1 | 7-29-18 | 7-31-18 | Coal | San Antonio | $ 5,617.77 |
| 2 | 7- 9-18 | 7-15-18 | Lumber | Holliswood | 10,784.58 |
| 3 | 7-23-18 | 8-18-18 | do. | Madison | 3,664.78 |
| | Total | | | | $20,067.13 |

No. 1 sailed from New Orleans for Havana, Cuba, finished discharging the cargo on August 7, 1918, and returned to Mobile, Ala., on August 15, 1918.

No. 2 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on August 27, 1918, and returned to Pensacola, Fla., on August 31, 1918.

No. 3 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on September 11, 1918, and returned to Pensacola on September 15, 1918.

That the amounts of freight mentioned

in the following excerpt from an admission of fact, totaling $18,151.59, entered prior to July 31, 1919, were not paid to the Gulf Barge & Towing Company until subsequent to July 31, 1919, and that the voyages for which this freight was entered were not completed by the return of the barges to an American port until subsequent to July 31, 1919:

| No. | Date Entered. | Date Sailed. | Cargo. | Barge. | Amount of Freight. |
|---|---|---|---|---|---|
| 1 | 7-21-19 | 7-22-19 | Coal | San Antonio | $ 9.590.85 |
| 2 | 7- 6-19 | 7- 6-19 | Lumber | Ethel Clarke | 5,151.25 |
| 3 | 7- 6-19 | 7- 6-19 | do. | Madison | 3,409.49 |
| | Total .............................. | | | | $18,151.59 |

No. 1 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging her cargo on August 2, 1919, and returned to Pensacola on August 7, 1919.

No. 2 sailed from St. Andrews, Fla., for Cardenas, Cuba, discharged her cargo at Cardenas, and returned to St. Andrews August 24, 1919.

No. 3 sailed from St. Andrews, Fla., for Caibarien, Cuba, discharged her cargo, and returned to Mobile, Ala., on August 30, 1919.

That to this total of $18,151.59 should be added $11,536.59 freight earned by the barge Holliswood, entered prior to July 31, 1919, and on which the voyage was not complete until August 6, 1919, making a total of $29,-688.18 freight entered in the books of the Gulf Barge & Towing Company prior to July 31, 1919, but not paid until subsequent to that date.

That against the said freights entered in the fiscal year ended July 31, 1918, expenses were prepaid in that year in the total sum of $2,354.76, and that the net freight of $17,-712.37 is income reported in the fiscal year ended July 31, 1918, but not earned until the subsequent fiscal year; that the greater portion of the expenses were paid in the fiscal year ended July 31, 1919.

That against the said freights entered in the fiscal year ended July 31, 1919, expenses were prepaid in that year in the total sum of $10,512.95, and that the net freight of $19,175.23 is income reported in the fiscal year ended July 31, 1919, but not earned until the subsequent fiscal year; that the greater portion of the expenses were paid in the fiscal year ended July 31, 1920.

That the Gulf Barge & Towing Company earned no freights of any character prior to the fiscal year ended July 31, 1918, and that no such freights are entered in its books.

That there was a net consolidated loss on the income tax returns of Robert P. Hyams Coal Company, Limited, South Brilliant Coal Company, and Gulf Barge & Towing Company for the fiscal year ended July 31, 1920 (consolidated), aggregating $27,661.60, as shown by the admission of the government.

That the freight services by the barge San Antonio on both voyages in question were performed by the Gulf Barge & Towing Company under oral agreement for the Robert P. Hyams Coal Company, Limited, and consisted of carrying coal from the United States to Cuba, there being no return freight on either voyage, and that the freight services by the other barges in question were performed by the Gulf Barge & Towing Company under oral agreement for third parties, and consisted of carrying lumber from the United States to Cuba, there being no return freight on any of the five voyages.

That the books of the Robert P. Hyams Coal Company, Limited, and its affiliated companies, were kept approximately on an accrual basis, and the adjustments sought having been made would present, on such basis, a correct picture of income for the years in question.

Upon these findings of fact I cannot conclude, as the government requests, that the method of accounting used by the three companies during the fiscal years in question correctly reflected the true income of the consolidated group, nor that the deferring of the charges conflict with proper theories of ship accounting, because the method is recognized by competent accounting authority. Montgomery's Manual of Auditing, Theory and Practice, p. 365, reads: " * * * The revenues and expenses of uncompleted voyages should likewise be set up on the balance sheet as deferred items, and only the results from the completed voyages should be transferred to the profit and loss account," etc.

Nor can I find that the deferment of the charges requires any adjustment with respect to taxes with previous fiscal years to the first involved herein, since the Gulf Barge & Towing Company did not commence any barge voyage prior to the beginning of the fiscal year ending July 31, 1918. And since the deferment of $19,175.23, as income from the fiscal year ended July 31, 1919, to the fiscal year ended July 31, 1920, which is one of the adjustments prayed for, would still result in a net consolidated loss for the fiscal year ended July 31, 1920, there would be no necessity arising from the adjustment requested which would require a further adjustment for subsequent years.

[1] The trend of authority is to the effect that mere bookkeeping methods neither create nor change any fact; that bookkeeping entries have only an evidentiary value; that the courts, in the absence of positive law to the contrary, will construe a revenue law as intended to reach actual income, the books to be regarded as neither indispensable nor conclusive; and that a decision must rest upon the actual facts. In Doyle v. Mitchell Bros., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054, it was held that the term "income" is employed in the act in its natural and obvious sense, as importing something entirely distinct from capital, either as the subject of taxation or as a measure of the tax, conveying rather the idea of gain or increase arising from corporate activities.

[2] In this case the operation of the barges and the actual payment of cash for the freight services was not made until after the respective fiscal years elapsed in which the freights were entered on the books, and I can see no merit in the government's contention that these freights should be considered as income, subject to a tax as such, within the fiscal year preceding the actual accrual, just because bookkeeping entries were made in anticipation.

[3] There is no doubt that, under the Revenue Law of 1918, the accrual basis, once adopted, must be consistently adhered to by the taxpayer. The courts have recognized this consistently, and denounced any practice that would result in computing taxes attributable to a given year, using the cash basis for a part and an accrual basis for the balance of the year. The law contemplates consistency in the keeping of books, once a method is adopted. N. S. Barstow & Co. v. Bowers, Collector (D. C.) 15 F.(2d) 75, 78.

[4] The law also contemplates the distinct character of the income sought to be taxed, and puts the burden upon the Commissioner to make the computation of taxes in such manner as does clearly reflect the income. The Revenue Act of 1918, 41 Stat. 1057, § 212 (b), Comp. St. § 6336⅛f(b), reads:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be), in accordance with the method of accounting regularly employed in keeping the books of such taxpayer, but if no such. method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

Certainly the statute could be no plainer. Much is left to the sound discretion of the Commissioner. This does not mean that he may, capriciously or arbitrarily, sacrifice the facts of a case to theory or fiction. Hough & Keenan Case, cited infra. The language of the statute connotes flexibility, rather than rigidity, and a careful consideration of its terms dispels the idea of rigidity behind the argument of the defendant government. This idea is predicated upon the proposition that the method of bookkeeping of the plaintiff was not upon an accrual basis, strictly speaking. I have found that it was not strictly on an accrual basis, but, even though it was rather a mixed method of bookkeeping, the fact still remains that the Commissioner, in some manner, should have made the computation upon a basis that did clearly reflect the income sought to be taxed. Becker v. U. S. (C. C. A.) 21 F.(2d) 1003 (5th C. C. A.); U. S. v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Fidelity & Columbia Trust Co. v. Lucas (D. C.) 7 F.(2d) 146. His failure to do so compels judicial inquiry to determine the true facts. Arthur R. Jones Syndicate v. Commissioner (C. C. A.) 23 F.(2d) 833 (7 C. C. A.); Galatoire Bros. v. Limes (D. C.) 11 F.(2d) 878; Id. (C. C. A.) 23 F.(2d) 676 (5 C. C. A.).

[5] The assessment by the Commissioner is only recognized as prima facie correct, and this for the practical purposes of the collection. The taxpayer is always favored by Congress with means of obtaining judicial relief. I have examined the opinion of the Board of Tax Appeals, which recites in part that the evidence in respect to the unearned freights before it was far from satisfactory. It plainly shows that the plaintiff's case was not as fully presented to the Board of Tax Appeals as it was at the hearing before me. The opinion indicates the board's apprehension that the adjustment sought to be made in the income tax returns of the two years under review might not present a correct picture of the income for those years, and that the evidence before it did not show that the changes asked for with respect to the method of keeping the taxpayer's books would be the only changes which should be made if the basis of accounting was to be modified. Their conclusion that the taxpayer's point should be denied is specifically declared to be made in view of the unsatisfactory record.

[6, 7] The Supreme Court, and the inferior courts as well, recognize the quasi judicial quality of the functions of the Board of Tax Appeals, which has appellate jurisdiction of

the decisions of the Commissioner. The findings of the board are entitled to great weight, and should not lightly be disturbed. Blair, Commissioner, v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. ——, cited on behalf of the government, must, however, be taken in its relation to the settled rule that any doubt in a taxing statute should be resolved in favor of the taxpayer and against the government.

Government counsel omit a very important clause in their excerpt from section 212 (b), which they quote in support of their argument, that no statutory construction is required in this case. The omission is so significant as to seem a confession to the contrary. The clause reads: "But if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income." Comp. St. § 6336⅛f(b). The case resulted from and turns entirely upon the failure of the Commissioner to correctly construe and apply that part of the statute—the part which seems unfortunately to have been too much ignored.

Accordingly there will be a judgment in favor of plaintiff, as prayed for, with costs.